



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 9, 2021**

_Mark X. Mullin_

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FT. WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REBECCA R. DAVIS, | § | CASE NO. 20-40679-MXM-7 |
| | § | |
| DEBTOR. | § | CHAPTER 7 |
| | § | |

---

| | | |
|---|---|---|
| | § | |
| KILA RENNAKER, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADVERSARY NO. 20-04065 |
| | § | |
| REBECCA R. DAVIS, | § | |
| | § | |
| DEFENDANT. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
*[Relating to Adv. No. 1]*

The Court held a trial to (i) liquidate all claims asserted by Plaintiff Kila Rennaker ("***Ms. Rennaker***") against Debtor/Defendant Rebecca R. Davis ("***Ms. Davis***"); (ii) determine whether Ms. Davis is entitled to a discharge under 11 U.S.C. § 727(a)(3) and (a)(5); and (iii) determine whether Ms. Rennaker's liquidated claims against Ms. Davis are nondischargeable under 11 U.S.C. § 523(a)(2) and (a)(4). The Court has reviewed, analyzed, and considered the Complaint,[1] the Answer[2], the testimony of witnesses, the exhibits admitted into evidence, and the arguments of counsel. After due deliberation, the Court makes the following findings of fact and conclusions of law.

## I.     JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This proceeding is a core proceeding over which the Court has statutory and constitutional authority to enter final orders and judgments pursuant to 28 U.S.C. § 157(b)(2)(A), (I), (J), and (O). Even if the Court would not otherwise have the authority to enter a final judgment, the Court finds that the parties have consented to the Court's issuance of a final judgment in this proceeding. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

## II.     BACKGROUND

### A.     Ms. Rennaker retains Ms. Davis in 2008 as her divorce attorney

This case stems from Ms. Rennaker's divorce from her then husband, Dr. Bruce Hebbert ("***Dr. Hebbert***"). Ms. Rennaker's divorce case was filed on June 23, 2008, in the 43rd Judicial District Court of Parker County, Texas, Cause No. CV08-0975, styled *In the matter of the Marriage of Bruce E. Hebert and Kila Rae Hebbert* (the "***Divorce Action***").[3] At the time the

---

[1] *Complaint Objecting to Discharge and Dischargeability of Indebtedness*, Adv. ECF No. 1 (the "***Complaint***").
[2] *Defendant's Original Answer*, Adv. ECF No. 5 (the "***Answer***").
[3] Complaint, pg. 2, ¶ 2.3.

Divorce Action was filed, Dr. Hebbert was a veterinarian and, together with Ms. Rennaker, they owned a successful equine veterinarian practice in Weatherford, Texas. Ms. Rennaker and Dr. Hebbert had three young children. Further, among other assets not relevant here, Ms. Rennaker and Dr. Hebbert jointly owned several real estate properties, and Dr. Hebbert owned at least $19,208 worth of American Airlines Advantage Miles.

Shortly before the Divorce Action was filed, Ms. Rennaker and Ms. Davis met for an initial consultation. During that initial consultation, Ms. Rennaker and Ms. Davis discussed how they shared a commonality of experiences: both were involved in divorces from husbands who were successful and well regarded in the community, had child custody issues, and had significant division of asset issues to be resolved in their divorce cases. Ms. Rennaker testified credibly that her shared experience with Ms. Davis gave her the impression that Ms. Davis could successfully represent her in the Divorce Action. Therefore, Ms. Rennaker decided to retain Ms. Davis as her lawyer and, on June 12, 2008, they both executed an Engagement Letter.[4]

At the time of Ms. Davis' retention by Ms. Rennaker, Ms. Davis had been a licensed and practicing attorney for three years. Although Ms. Davis was primarily practicing as a family law attorney, she had not brought to conclusion a divorce case with as many assets as Ms. Rennaker's case. Ms. Davis was, however, in the process of representing other clients in divorce cases that were of the same magnitude as Ms. Rennaker's divorce case.[5] Ms. Rennaker contends that Ms. Davis made "material omissions" regarding her prior family law experience. In her testimony, however, Ms. Rennaker did not identify any actual "material representations" made by Ms. Davis leading up to and during Ms. Davis' representation of Ms. Rennaker that were inaccurate.

---

[4] Pl. Ex. 32 (the "***Engagement Letter***").
[5] Pl. Exs. 35 and 36.

In general, the parties disagreed about the overall quality of Ms. Davis' representation of Ms. Rennaker throughout the divorce proceedings. Ms. Davis testified that she believed Ms. Rennaker was satisfied with the general quality of Ms. Davis' representation and that Ms. Rennaker obtained primary custody of the children and the maximum amount of child support for the minor children, which were Ms. Rennaker's primary concerns.

Ms. Rennaker, on the other hand, testified that she was generally not satisfied with Ms. Davis' overall representation. For example, Ms. Rennaker testified that Ms. Davis failed to timely respond to Ms. Rennaker's telephone calls and e-mail communications and that Ms. Davis failed to adequately counsel her concerning who should be paying the children's future college tuition and other related expenses.

In general, the Court did not find compelling or give much weight to the testimony of either Ms. Davis or Ms. Rennaker regarding the general overall quality of Ms. Davis' representation of Ms. Rennaker throughout the divorce proceeding. Rather, the Court focused primarily on the specific issues and contentions raised in the Complaint—(i) Ms. Davis' representation of Ms. Rennaker during an August 31, 2009, mediation (the "*Mediation*")[6] in the Divorce Action; (ii) the resulting *Mediated Settlement Agreement*[7] executed on August 31, 2009; (iii) the subsequent *Agreement Incident to Divorce*[8] executed on September 30, 2009, and; (iv) Ms. Davis' failure to prepare, negotiate, finalize, record, and file the necessary documents to effectuate the transfer of certain property (detailed below) from Dr. Hebbert to Ms. Rennaker, which were significant terms included in the Mediated Settlement Agreement, Agreement Incident to Divorce, and *Final Decree of Divorce*[9].

---

[6] Pl. Ex. 2.
[7] *Id.*
[8] Pl. Ex. 3
[9] Pl. Ex. 12, pg. 91

**B.** **The August 31, 2009, Mediation and Mediated Settlement Agreement**

On August 31, 2009, the Mediation was commenced to address the remaining disputes between Ms. Rennaker and Dr. Hebbert in the Divorce Action.

During the Mediation, Ms. Rennaker and Dr. Hebbert ultimately reached a settlement agreement compromising on their remaining disputes to allow for the dissolution of their marriage. The terms of the settlement were reduced to writing in the Mediated Settlement Agreement. Relevant to this case, the Mediated Settlement Agreement provided the following three significant terms: Ms. Rennaker was to obtain (i) clear title to the couple's homestead at 105 Briarwood Street, Weatherford, Texas (the "***Homestead Property***"), (ii) clear title to the couple's property described as ten acres out of M.G. Norris Survey and R.H. Burnett Survey (mistakenly labeled in the Mediated Settlement Agreement as the "Obenchain Survey") (the "***Norris/Burnett Property***"), and (iii) $8,500 worth of the Dr. Hebbert's American Airlines Advantage Miles—which represented 44% of Dr. Hebbert's American Airlines Advantage Miles (the "***Rennaker Frequent Flyer Miles***")[10] (together, the Homestead Property, the Norris/Burnett Property, and the Rennaker Frequent Flyer Miles are referred to as the "***Three Assets***").

**C.** **The September 30, 2009, Agreement Incident to Divorce and Final Decree of Divorce**

On September 30, 2009, Ms. Rennaker, Dr. Hebbert, and their respective counsel, including Ms. Davis, executed the Agreement Incident to Divorce, which provided, in part, that the Three Assets were being awarded to Ms. Rennaker "as her sole and separate property" and that Dr. Hebbert "partitions, quitclaims, assigns, and conveys to [Ms. Rennaker]" the Three Assets.[11] Although the Three Assets were intended to be awarded to Ms. Rennaker as her sole and separate

---

[10] Pl. Ex. 2, Schedule "A."
[11] Pl. Ex. 3, pg. 5, ¶ W-1 (the Homestead), pg. 5, ¶ W-2 (the Norris/Burnett Property), and pg. 7, ¶ W-17 (the Rennaker Frequent Flyer Miles).

property in the Mediated Settlement Agreement and Agreement Incident to Divorce, Ms. Davis failed to prepare, negotiate, finalize, record, and file the necessary documents to effectuate Dr. Hebbert's conveyance of his interest in the Three Assets to Ms. Rennaker. Ms. Davis does not dispute that she failed to perform these responsibilities for Ms. Rennaker.

On September 30, 2009, the Final Decree of Divorce was entered in the Divorce Action dissolving Ms. Rennaker's and Dr. Hebbert's marriage. Ms. Davis billed Ms. Rennaker $34,841.74[12] in net attorneys' fees and costs for having represented her in the Divorce Action. Included in the attorneys' fees and costs is $2,000.00 for fees (representing ten hours) charged by Ms. Davis for the Mediation through the entry of the Final Decree of Divorce.[13]

**D.  In 2015, Ms. Rennaker discovered that Ms. Davis failed to effectuate Dr. Hebbert's conveyance of his interests in the Three Assets to Ms. Rennaker**

### 1.  The failed June 2015 sale of the Norris/Burnett Property

In or around June 2015, Ms. Rennaker, believing she had clear title to the Norris/Burnett Property, entered into a contract to sell the Norris/Burnett Property to a third-party purchaser for $180,000. At or about the date set for closing on the sale contract, the title company discovered that Dr. Hebbert was still listed in the real property records as owning an interest in the Norris/Burnett Property. Upon learning that Dr. Hebbert had not conveyed his interest in the Norris/Burnett Property to Ms. Rennaker, she immediately contacted Dr. Hebbert to request that he execute the necessary conveyance documents to allow the sale to close. Dr. Hebbert, however, refused to cooperate with Ms. Rennaker. Therefore, Ms. Rennaker was in default of the contract because she was not able to deliver clear title to the third-party purchaser—causing the sale to fall

---

[12] Pl. Ex. 34.

[13] *Id.*

through. Ms. Rennaker testified that because she was in breach of the sale contract, she was required to pay the third-party purchaser $10,000 in damages.

Ms. Rennaker contends that she was further damaged in an additional amount of $48,711.07 because she was not able to invest the sale proceeds of $180,000 that would have been realized had the sale closed. Even though Ms. Rennaker was not able to sell the Norris/Burnett Property in 2015 for approximately $180,000, Ms. Rennaker ultimately sold the Norris/Burnett Property in 2017 for approximately $220,000. However, in support of her damages calculation, Ms. Rennaker offered a spreadsheet[14] with hypothetical rates of return to support her contention of lost investment opportunity costs. The Court finds, however, that the spreadsheet and other offsetting assumptions made by Ms. Rennaker were speculative and not credible evidence to establish her alleged damages for lost investment opportunity.

### 2. Ms. Rennaker contacts Ms. Davis concerning the title issues with the Three Assets

Upon discovering the title problem with the Norris/Burnett Property, Ms. Rennaker further discovered that Ms. Davis had not only failed to cause Dr. Hebbert to convey his interest to the Norris/Burnett Property, but Ms. Davis also failed to cause Dr. Hebbert to convey his interests in the Homestead Property and the Rennaker Frequent Flyer Miles to Ms. Rennaker. Ms. Rennaker contacted Ms. Davis to inquire about (i) why she had failed to cause Dr. Hebbert to convey his interests in the Three Assets to Ms. Rennaker, as required by the Mediated Settlement Agreement, Agreement Incident to Divorce, and Final Decree of Divorce, and (ii) what could be done to rectify Ms. Davis' failure to cause Dr. Hebbert to quitclaim, assign, and convey his interests in the Three Assets to Ms. Rennaker.

---

[14] Pl. Ex. 11.

Ms. Davis first requested that Ms. Rennaker enter into a new fee arraignment and revised engagement letter (the "**2015 Engagement Letter**").[15] Ms. Davis then filed a declaratory judgment action in in the 43rd Judicial District Court of Parker County, Texas, Cause No. CV 15-686, styled *Kila Rae Rennaker, Plaintiff v. Bruce E. Hebbert, Defendant* (the "**Declaratory Judgment Action**").[16] Dr. Hebbert responded by filing a motion for summary judgment, arguing that the declaratory judgment petition had no legal basis. Ms. Davis failed to respond to or inform Ms. Rennaker of the summary judgment motion. Consequently, the Texas state court granted Dr. Hebbert's motion for summary judgment and entered its *Final Summary Judgment*[17] dismissing the Declaratory Judgment Action.

### 3. Ms. Rennaker retains Whitaker Chalk law firm to cure title issues with the Three Assets

Thereafter, Ms. Rennaker retained new counsel—Whitaker Chalk Swindle & Schwartz PLLC ("**Whitaker Chalk**")—to represent her to obtain clear title to the Three Assets that she should have received in 2009 at or shortly after the Final Decree of Divorce was entered in the Divorce Action. Mr. Joe Kirk Bryant ("**Mr. Bryant**"), an attorney at Whitaker Chalk, testified credibly and corroborated Ms. Rennaker's contentions. Mr. Bryant testified that Ms. Davis had failed to prepare any documents or take any action that was required to convey Dr. Hebbert's interests in the Three Assets to Ms. Rennaker. Mr. Bryant further testified that the Declaratory Judgment Action filed by Ms. Davis—in an attempt to cure her prior failings—was legally and procedurally improper, as evidenced by the Final Summary Judgment entered in the Declaratory Judgment Action.

---

[15] Pl. Ex. 33.
[16] Pl. Ex. 5.
[17] Pl. Ex. 6.

On May 9, 2016, Whitaker Chalk filed (i) *Kila Rae Hebbert Rennaker's Amended Petition for Enforcement of Property Division*[18] in the Divorce Action, and (ii) *Original Petition for Postdivorce Division of Property, or in the Alternative, Partition of Real Property*[19] to obtain the relief Ms. Rennaker should have received in 2009 under the Mediated Settlement Agreement, Agreement Incident to Divorce, and Final Decree of Divorce. Ultimately, after substantial litigation, Whitaker Chalk was successful in obtaining Dr. Hebbert's assignments of his interests in the Three Assets to Ms. Rennaker.[20]

Whitaker Chalk incurred attorneys' fees and costs in the amount of $63,082.98 specifically related to the firm's efforts to obtain Dr. Hebbert's assignments of his interests in the Three Assets to Ms. Rennaker.[21] Mr. Bryant testified that had Ms. Davis taken the necessary steps in September 2009 to obtain Dr. Hebbert's assignments of his interests in the Three Assets to Ms. Rennaker—as required by the Mediated Settlement Agreement, Agreement Incident to Divorce, and Final Decree of Divorce —the attorneys' fees and costs incurred by Ms. Rennaker from Whitaker Chalk would have been unnecessary. Based on the testimony of Mr. Bryant and a review of the Whitaker Chalk fee statement, the Court finds that the Whitaker Chalk fees and costs were reasonable.

## E.    Ms. Davis' bankruptcy filing

On February 18, 2020, Ms. Davis filed a Chapter 13 bankruptcy case, [22] which was later converted to Chapter 7.[23] Prior to the filing of this Adversary Proceeding, Ms. Davis had filed her Schedules,[24] Amended Schedules,[25] and Statement of Financial Affairs[26] in her bankruptcy case.

---

[18] Pl. Ex. 15.
[19] Pl. Ex. 16.
[20] Pl. Ex. 20.
[21] Pl. Ex. 21.
[22] Bankr. ECF No. 1.
[23] Bankr. ECF No. 29.
[24] Bankr. ECF No. 1.
[25] Bankr. ECF Nos. 8, 12, 34, 41, 45, 46, 47 and 51.
[26] Bankr. ECF No. 1.

Ms. Davis also appeared and gave testimony at an original § 341 meeting of creditors in her Chapter 13 case on April 22, 2020,[27] and at a continued § 341 meeting of creditors in her Chapter 13 case on April 22, 2020.[28] Ms. Davis also appeared and gave testimony at her § 341 meeting in her Chapter 7 case, held August 12, 2020.

Neither the Chapter 13 Trustee or the Chapter 7 Trustee raised an issue or alleged that Ms. Davis concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which her financial condition or business transactions might be ascertained. Further, neither the Chapter 13 Trustee or the Chapter 7 Trustee raised an issue or alleged that Ms. Davis failed to satisfactorily explain any loss of assets or deficiency of assets to meet her liabilities.

Ms. Rennaker contends that "[d]uring the course of representing [Ms. Rennaker], [Ms. Davis] disclosed to [Ms. Rennaker] that she had previously obtained a sizeable settlement in her own divorce proceeding. [Ms. Davis] has not explained satisfactorily to this Court or her creditors the loss or deficiency of any such assets to meet her liabilities."[29] At trial, Ms. Rennaker testified that between 2008–2012, she received a divorce settlement of approximately $100,000 in real estate proceeds and approximately $300,000 in funds from a retirement plan. Ms. Davis' uncontroverted testimony was that she spent those funds over the course of nearly a decade to supplement her income from her law practice. The Court found Ms. Davis' testimony on this issue sufficient to meet her burden to explain satisfactorily the disposition of such assets over the past many years.

---

[27] Bankr. ECF No. 22.
[28] Bankr. ECF No. 26.
[29] Complaint, pg. 9–10, ¶ 4.2.

Ms. Rennaker further contends that "[d]espite multiple inquiries in creditors meetings, [Ms. Davis] has failed to produce bank statements from her sole practice law firm's IOLTA Trust Account, establishing the source and characterization of all funds in and out of such account. Thus, Defendant has concealed recorded information—including books and records—from which a complete understanding of her financial condition and business transactions might be ascertained."[30] Ms. Davis, however, raised timely objections to such requests in her discovery responses, yet Ms. Rennaker did not file or seek to obtain an order compelling Ms. Davis to respond to such requests.[31] Because the objections were not raised before the Court through a motion to compel or otherwise, Ms. Davis was not required to respond to the discovery. Although the Court need not rule on the merits of Ms. Davis' objections at this point—and the Court is not opining on the ultimate merits of the objections to the discovery lodged by Ms. Davis—the Court notes that, on their face, the objections lodged are not clearly frivolous.

Finally, Ms. Rennaker failed to offer credible evidence that Ms. Davis concealed, destroyed, or failed to keep and preserve books, documents, records, and papers from which her financial condition or business transactions might be ascertained.

## III.    LEGAL ANALYSIS

Ms. Rennaker's Complaint seeks to (i) liquidate all claims asserted by Ms. Rennaker against Ms. Davis; (ii) determine whether Ms. Davis is entitled to a discharge under 11 U.S.C. § 727(a)(3) and (a)(5); and (iii) determine whether Ms. Rennaker's liquidated claims against Ms. Davis are nondischargeable under 11 U.S.C. § 523(a)(2) and (a)(4). The Court will address each Count in the Complaint, in turn.

---

[30] Complaint, pg. 10, ¶ 4.3.
[31] Pl. Ex. Nos. 24 and 25.

## A.    Count One—Negligence

Ms. Rennaker asserts that Ms. Davis is liable for negligence. In order to establish negligence, a plaintiff must show that (i) there was a duty, (ii) that duty was breached, and (iii) damages resulted as a proximate cause of that breach.[32] Here, Ms. Rennaker has the burden to establish each of these elements by a preponderance of the evidence.

The credible and uncontroverted evidence established that Ms. Davis (i) had a duty to Ms. Rennaker, (ii) breached that duty, and (iii) proximately caused Ms. Rennaker's resulting damages. In fact, Ms. Davis admits that she had a such a duty, she breached that duty, and Ms. Rennaker was damaged as a result of that breach.

Based on the foregoing, the Court finds and concludes that Ms. Rennaker satisfied her burden to establish that Ms. Davis was negligent and has established a claim for negligence against Ms. Davis. In addition, the Court finds and concludes that Ms. Rennaker established damages in the following amounts: (i) $10,000 resulting from the breach of the 2015 sale agreement regarding the Norris/Burnett Property, (ii) the Whitaker Chalk attorneys' fees and costs in the amount of $63,082.98, and (iii) the attorney fees Ms. Davis charged Ms. Rennaker for the Mediation through the entry of the Final Decree of Divorce in the amount of $2,000, for total damages suffered by Ms. Rennaker in the amount of $75,082.98 (the "***Liquidated Damages***").

## B.    Count Two—Breach of Fiduciary Duty

Ms. Rennaker asserts that Ms. Davis was an attorney working in the course and scope of her employment as an attorney in her dealings with Ms. Rennaker. As such, Ms. Rennaker

---

[32] *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

contends that Ms. Davis was a fiduciary of Ms. Rennaker. Ms. Rennaker further contends that Ms. Davis breached her fiduciary duty to Ms. Rennaker.

A breach of fiduciary duty occurs under Texas law when: (i) the plaintiff and defendant had a fiduciary relationship, (ii) the defendant breached that fiduciary relationship to the plaintiff, and (iii) the defendant's breach resulted in (a) injury to the plaintiff or (b) benefit to the defendant.[33] In Texas, attorneys owe their clients a fiduciary duty as a matter of law.[34] Moreover, when a lawyer engages in a clear and serious violation of fiduciary duties, courts may require the lawyer to forfeit some or all of that lawyer's compensation for the matter.[35] Here, Ms. Rennaker has the burden to establish each of these elements by a preponderance of the evidence.

The credible and uncontroverted evidence established that (i) Ms. Davis was a fiduciary to Ms. Rennaker, (ii) Ms. Davis breached her fiduciary duty to Ms. Rennaker, and (iii) Ms. Davis' breach of her fiduciary duty resulted in both (a) injury to Ms. Rennaker—by way of Ms. Rennaker not receiving clear title to the Three Assets—and (b) benefit to Ms. Davis in the form of attorney's fees that she billed Ms. Rennaker in connection with the Mediation and thereafter— which is ultimately where the breach occurred—in the amount of $2,000.00.[36] In addition, addressed in more detail below, Ms. Davis' breach of her fiduciary duty to Ms. Rennaker constituted a defalcation.

Based on the foregoing, the Court finds and concludes that Ms. Rennaker satisfied her burden to establish that Ms. Davis breached her fiduciary duty to Ms. Rennaker and has established a claim for breach of fiduciary duty against Ms. Davis.

---

[33] *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).
[34] *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988).
[35] *Parker*, 514 S.W.3d at 221.
[36] Pl. Ex. No. 34, pg. 4–5.

The damages incurred by Ms. Rennaker resulting from Ms. Davis' defalcation and breach of fiduciary duty are in the Liquidated Damages amount of $75,082.98.

**C.      Count Three—Violations of the Texas Deceptive Trade Practices Act: Unconscionability**

Ms. Rennaker contends that she was a "consumer" who "acquired services," as those terms are defined in the Texas Deceptive Trade Practices Act ("***DTPA***"). Ms. Rennaker further contends that Ms. Davis violated the DTPA because she engaged in "false, misleading, or deceptive acts or practices," such as "the failure to disclose information concerning goods or services which was known at the time of the transaction into which the consumer would not have entered had the information been disclosed."[37] Additionally, Ms. Rennaker contends that Ms. Davis violated the DTPA because she failed to disclose that she lacked the necessary experience to adequately represent Ms. Rennaker in her divorce case. Finally, Ms. Rennaker contends that Ms. Davis committed an "unconscionable action or course of conduct."[38] Here, Ms. Rennaker has the burden to establish by a preponderance of the evidence each of the required elements of a DTPA claim.

Other than Ms. Rennaker's contentions, however, she failed to present sufficient credible evidence to satisfy her burden that Ms. Davis committed or made any "false, misleading, or deceptive acts or practices." Further, Ms. Rennaker failed to present sufficient credible evidence to establish that Ms. Davis knowingly or intentionally committed "any unconscionable action or course of action." Rather, the overwhelming and uncontroverted evidence established that Ms. Davis failed to complete the required legal work to consummate the terms of the Mediated Settlement Agreement, Agreement Incident to Divorce, and Final Decree of Divorce on behalf of

---

[37] Complaint, pg. 9, ¶ 3.9.
[38] *Id.*

Ms. Rennaker. Ms. Davis' failure to take such actions, however, did not rise to the level of knowing or intentional conduct necessary to satisfy the elements for a DTPA cause of action.

Based on the foregoing, because Ms. Rennaker failed to satisfy her burden to establish that Ms. Davis made or committed any "false, misleading, or deceptive act or practice" or that she knowingly or intentionally committed any "unconscionable action or course of conduct," Ms. Rennaker's DTPA claim against Ms. Davis fails.

### D.    Count Four—§ 727(a)(5): Failure to Explain Satisfactorily, Before Determination of Denial of Discharge, Any Loss of Assets or Deficiency of Assets to Meet the Debtor's Liabilities

A plaintiff asserting a § 727(a)(5) count carries the initial burden to show that the defendant possessed substantial, identifiable assets that are now unavailable for distribution to creditors.[39] Once the unavailable assets are established, the burden shifts to the debtor to show a satisfactory explanation of the disposition of such assets.[40] What constitutes a "satisfactory" explanation for the reduction of assets has not been definitively defined, but a lack of wisdom in the debtor's expenditures, standing alone, is not grounds for denial of a discharge.[41]

The proper focus under § 727(a)(5) is on the credibility of the proffered explanation rather than the propriety of the disposition of the assets, and an explanation need not even be meritorious to be satisfactory.[42] The debtor's explanation, however, must consist of more than a vague, indefinite, and uncorroborated hodgepodge of financial transactions.[43] When substantial assets have disappeared from the estate, the debtor must produce supporting documentary evidence.[44]

---

[39] *In re Chu*, 679 F. App'x 316, 319 (5th Cir. 2017).
[40] *Id.*
[41] *In re Dung Anh Phan*, 607 B.R. 598, 613 (Bankr. S.D. Tex. 2019).
[42] *In re Crumley*, 428 B.R. 349, 371 (Bankr. N.D. Tex. 2010).
[43] *In re Henley*, 480 B.R. 708, 787 (Bankr. S.D. Tex. 2012).
[44] *Id.* (citing *In re Chalik*, 748 F.2d 616, 619–20 (11th Cir. 1984)).

The creditor must prove by a preponderance of the evidence that the court should deny the debtor a discharge under § 727(a)(5).[45]

First, neither the Chapter 13 Trustee or the Chapter 7 Trustee raised an issue or alleged that Ms. Davis failed to explain satisfactorily any loss of assets or deficiency of assets in her bankruptcy case. Second, even if the Court were to find that Ms. Rennaker's contentions were sufficient to satisfy her burden of proof (which the Court does not so find), the testimony of Ms. Davis satisfactorily explained that she spent those funds over the course of nearly a decade to supplement her income from her law practice.

Based on the foregoing, Ms. Rennaker failed to satisfy her burden to establish that Ms. Davis had substantial assets that are no longer available for creditors. Moreover, even if Ms. Rennaker had established that Ms. Davis possessed substantial assets that are no longer available for creditors, Ms. Davis satisfactorily explained the disposition of her prior assets. Therefore, Ms. Rennaker's § 727(a)(5) claim fails.

**E.    Count Five—§ 727(a)(3): Concealing, Destroying, Mutilating, Falsifying or Failing to Keep or Preserve Recorded Information, Including Books, Documents, Records and Papers, From Which Debtor's Financial Condition or Business Transactions Might Be Ascertained**

A court may deny a debtor a discharge when the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.[46] The plaintiff bears the initial burden to prove that (i) the defendant failed to keep and preserve financial records and (ii) this failure prevented the plaintiff from

---

[45] *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *see also In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).
[46] 11 U.S.C. § 727(a)(3).

16

ascertaining the defendant's financial condition.[47] If the plaintiff satisfies this burden, the defendant bears the burden to prove that the inadequacy is justified under all the circumstances.[48] Ultimately, the plaintiff must prove by a preponderance of the evidence that the court should deny the debtor a discharge under § 727(a)(3).[49]

First, neither the Chapter 13 Trustee or the Chapter 7 Trustee raised an issue or alleged that Ms. Davis concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers from which her financial condition or business transactions might be ascertained.

Second, in her Complaint, Ms. Rennaker contends that Ms. Davis failed to produce bank statements from her law firm's IOLTA trust account as the primary basis for her contention that Ms. Davis "concealed recorded information—including books and records—from which a complete understanding of her financial condition and business transactions might be ascertained."[50] As previously noted, however, Ms. Davis raised timely objections to Ms. Rennaker's discovery requests, yet Ms. Rennaker did not file or seek to obtain an order compelling Ms. Davis to respond to such requests.[51] Because the dispute was not raised before the Court, Ms. Davis was not required to respond to the discovery and, although the Court need not ruling on the merits of Ms. Davis' objections at this point, the Court notes that the objections lodged by Ms. Davis were not frivolous on their face.

Finally, Ms. Rennaker failed to present any credible evidence that Ms. Davis, in fact, failed to keep or preserve sufficient financial records.

---

[47] *In re Dennis*, 330 F.3d 696, 703 (5th Cir. 2003).
[48] *Id.*
[49] *See Grogan*, 498 U.S. at 291; *see also Beaubouef*, 966 F.2d at 178 .
[50] Complaint, pg. 10, ¶ 4.3.
[51] Pl. Ex. 24, ¶¶ 14–18.

Therefore, Ms. Rennaker did not satisfy her burden to establish by a preponderance of the evidence that Ms. Davis failed to keep and preserve financial records. Thus, Ms. Rennaker's § 727(a)(3) claim fails.

**F.      Count Six—§ 523(a)(2)(A): Debts Owed for Money to the extent obtained by Fraud, False Pretense, or False Promises**

A court may except a debt from an individual debtor's discharge, for money or services, to the extent that the debtor obtained the debt by false pretenses, false representation, or actual fraud.[52] The Fifth Circuit distinguishes false pretenses and false representations from actual fraud for purposes of § 523(a)(2)(A).[53] The plaintiff must prove by a preponderance of the evidence that the court should except the § 523(a) debt from the discharge.[54]

*1. Actual Fraud*

The elements for an exception to a discharge under § 523(a)(2)(A) for actual fraud are that (a) the debtor knowingly made a false representation; (b) the debtor intended the representation to deceive the creditor; (c) the creditor actually and justifiably relied on the representation; and (d) the creditor sustained a loss as a proximate result of its reliance on the false representation.[55]

*a. False Representations*

Ms. Rennaker contends that had she known that Ms. Davis (i) had been practicing law for only three years or (ii) had never brought to conclusion a divorce case with as many assets as Ms. Rennaker, then Ms. Rennaker would not have hired Ms. Davis. Ms. Rennaker further contends that Ms. Davis' failure to affirmatively raise these issues constitutes evidence of false representations sufficient to establish actual fraud. The Court disagrees. While Ms. Rennaker's

---

[52] 11 U.S.C. § 523(a)(2)(A).
[53] *Compare RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995) (citing the standard for false pretenses and false representations), *with Saenz v. Gomez*, 899 F.3d 384, 391 (5th Cir. 2018) (citing the standard for actual fraud).
[54] *Grogan*, 498 U.S. at 291.
[55] *See Saenz*, 899 F.3d at 391.

contentions may have had a bearing on whether she should have retained Ms. Davis as her attorney in the Divorce Action, the evidence does not establish that Ms. Davis ever misrepresented her legal or case experience leading up to or during her representation of Ms. Rennaker.

Based on the foregoing, because Ms. Rennaker failed to establish with credible evidence that Ms. Davis made any false representations, Ms. Rennaker's § 523(a)(2)(A) claim for actual fraud fails.

### b. An intent to deceive

Ms. Rennaker failed to offer any credible evidence that Ms. Davis ever intended to deceive Ms. Rennaker. Specifically, Ms. Rennaker failed to offer any credible evidence that Ms. Davis had a reckless disregard for the truth when she made representations to Ms. Rennaker.[56]

Based on the foregoing, because Ms. Rennaker failed to establish with credible evidence that Ms. Davis intended to deceive Ms. Rennaker with any misrepresentation, Ms. Rennaker's § 523(a)(2)(A) claim for actual fraud fails.

### 2. False Pretenses and False Representation

False pretenses and a false representation requires the creditor to prove (i) the existence of a knowing and fraudulent falsehood, (ii) that the fraudulent falsehood described past or current facts, and (iii) that the creditor justifiably relied upon the fraudulent falsehood.[57] False pretenses and a false representation have statements that falsely depict *current or past facts*.[58]

Here, Ms. Rennaker failed to establish with credible evidence that Ms. Davis made a knowing and fraudulent statement. Arguably, the only statement that could possibly fall into this category was the representation by Ms. Davis that her divorce experience was similar to Ms.

---

[56] *See In re Norris*, 70 F.3d 27, 30 n. 12 (5th Cir.1995).
[57] *See RecoverEdge L.P.*, 44 F.3d at 1293; *In re Imam*, No. 16-33362-HDH7, 2018 WL 614937, at *11 (Bankr. N.D. Tex. Jan. 29, 2018).
[58] *RecoverEdge L.P.*, 44 F.3d at 1293 (emphasis added).

Rennaker's upcoming divorce case. But even that statement did not constitute a knowing and fraudulent falsehood.

Based on the foregoing, because Ms. Rennaker failed to establish with credible evidence that Ms. Davis made a knowing and fraudulent falsehood, Ms. Rennaker's § 523(a)(2)(A) claim for false pretense or false representation fails.

## G. Count Seven—§ 523(a)(4): Debts for Fraud or Defalcation while acting in a Fiduciary Capacity, Embezzlement, or Larceny

A court may except a debt from an individual debtor's discharge for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.[59] Again, the creditor must establish by a preponderance of the evidence that the court should except the § 523(a) debt from the discharge.[60] Ms. Rennaker did not plead or offer any evidence of fraud, embezzlement, or larceny by Ms. Davis. Rather, Ms. Rennaker contends that Ms. Davis committed defalcation while acting in a fiduciary capacity.

### *1. Fiduciary Relationship*

As a threshold matter, to prevail on this Count, Ms. Rennaker must establish the existence of a fiduciary relationship.[61] Although whether the debtor's status as a fiduciary is a question of federal law, federal law will recognize state law to determine if a fiduciary relationship exists.[62] In Texas, as a matter of law, a fiduciary relationship exists between an attorney and client.[63] Because the stipulated and undisputed evidence established that Ms. Davis was Ms. Rennaker's attorney in the Divorce Action, Ms. Davis was acting in a fiduciary capacity for Ms. Rennaker.

---

[59] 11 U.S.C. § 523(a)(4).
[60] *Grogan*, 498 U.S. at 291.
[61] *See* 11 U.S.C. § 523(a)(4).
[62] *In re Whitaker*, 642 F. App'x 345, 348 (5th Cir. 2016).
[63] *Willis*, 760 S.W.2d at 645; *see also Floyd v. Hefner*, 556 F. Supp. 2d 617, 661 (S.D. Tex. 2008) (citing *Willis* and stating that "[a]n attorney has a fiduciary duty to his client as a matter of law"); *see also In re TOCFHBI, Inc.*, 413 B.R. 523, 532 (Bankr. N.D. Tex. 2009) (quoting the same language from *Flyod*).

### 2. Defalcation

For purposes of the section of the Bankruptcy Code excepting a debt from discharge, defalcation requires a fiduciary engaging in intentionally wrong conduct.[64] Conduct is intentionally wrong when the fiduciary (a) knows the conduct is improper or (b) engages in grossly reckless conduct.[65]

### a. Knowingly Improper

A fiduciary's conduct is knowingly improper when the fiduciary engages in conduct that the fiduciary knows is improper.[66] For example, in *Whitaker*, the fiduciary *knowingly* incurred improper attorney's fees and other litigation expenses; *knowingly* sought and received reimbursement of personal expenses that were not related to the fiduciary's duty; and *knowingly* engaged in self-dealing.[67]

Here, there is no evidence in the record to suggest that Ms. Davis *knowingly* engaged in her improper conduct. Consequently, the first prong of *Bullock*[68] for intentionally wrongful conduct has not been satisfied. Therefore, the Court must determine if Ms. Davis' conduct constitutes grossly reckless conduct.

### b. Grossly Reckless

Where actual knowledge of wrongdoing is lacking, conduct is considered as equivalent if the fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that such conduct would violate a fiduciary duty.[69] A conscious disregard involves "a gross

---

[64] *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273–74 (2013).
[65] *Id*.
[66] *Id*; *Whitaker*, 642 F. App'x at 348.
[67] *Whitaker*, 642 F. App'x at 348 (emphasis added).
[68] *Id*.
[69] *Bullock*, 569 U.S. at 274.

deviation from the standard of conduct that a law-abiding person would observe in the actor's situation."[70]

In Texas, a lawyer shall provide a client with competent representation and shall not neglect a legal matter entrusted to the lawyer.[71] Generally, finding that an attorney violated the rules of professional conduct is inadequate, without more, to show defalcation.[72] But the rules of professional conduct can be a guidepost for proving defalcation, and a gross deviation from the rules of professional conduct can be considered a conscious disregard to a substantial and unjustifiable risk.[73]

Here, Ms. Davis completely failed to take the necessary steps to implement the terms of the Mediated Settlement Agreement, Agreement Incident to Divorce, and Final Decree of Divorce regarding the Three Assets. As a fiduciary, Ms. Davis was tasked to complete the required legal work to consummate the terms of the Mediated Settlement Agreement, Agreement Incident to Divorce, and Final Decree of Divorce on behalf of her client, Ms. Rennaker. The Court finds that Ms. Davis' failure to take the obvious and necessary actions on behalf of Ms. Rennaker was a gross deviation from the standard of conduct expected of an attorney in her situation.

Consequently, based on the foregoing, Ms. Rennaker satisfied her burden to establish that Ms. Davis engaged in grossly reckless conduct sufficient to establish defalcation while acting in a fiduciary capacity under § 523(a)(4). Therefore, Ms. Rennaker's claim in the Liquidated Damages amount of $75,082.98 constitutes a debt that is excepted from Ms. Davis' discharge.

---

[70] *Id.*
[71] Tex. Disciplinary Rules Prof'l Conduct R. 1.01(a)–(b), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).
[72] *See In re Jahrling*, 816 F.3d 921, 927 (7th Cir. 2016).
[73] *Id.*

### IV.    Conclusion

Based on the foregoing, the Court finds and concludes as follows:

1. **Count One—Negligence**: Ms. Rennaker has satisfied her burden to establish a claim for negligence against Ms. Davis in the liquidated claim amount of $75,082.98; however, this debt for negligence is dischargeable in Ms. Davis' bankruptcy case.

2. **Count Two—Breach of Fiduciary Duty**: Ms. Rennaker has satisfied her burden to establish a claim for breach of fiduciary duty against Ms. Davis and, as addressed above, the breach of fiduciary duty here constituted a defalcation. The damages established by Ms. Rennaker caused by the defalcation while acting in a fiduciary capacity is in the liquidated claim amount of $75,082.98. As further addressed in Count Seven below, this debt for defalcation while acting in a fiduciary capacity is excepted from discharge in Ms. Davis' bankruptcy case.

3. **Count Three—Violations of the Texas Deceptive Trade Practices Act: Unconscionability**: Ms. Rennaker has failed to satisfy her burden to establish a claim for violations of the Texas Deceptive Trade Practices Act; therefore, Count Three is DENIED.

4. **Count Four—§ 727(a)(5): Failure to Explain Satisfactorily, Before Determination of Denial of Discharge, Any Loss of Assets or Deficiency of Assets to Meet the Debtor's Liabilities**: Ms. Rennaker failed to satisfy her burden to establish that Ms. Davis failed to explain satisfactorily any loss of assets or deficiency of assets to meet her liabilities; therefore, Count Four is DENIED.

5. **Count Five—§ 727(a)(3): Concealing, Destroying, Mutilating, Falsifying or Failing to Keep or Preserve Recorded Information, Including Books, Documents,**

**Records and Papers, From Which Debtor's Financial Condition or Business Transactions Might Be Ascertained**: Ms. Rennaker failed to satisfy her burden to establish that Ms. Davis failed to keep or preserve sufficient financial records; therefore, Count Five is DENIED.

6. **Count Six—§ 523(a)(2)(A): Debts Owed for Money, to the extent obtained by Fraud, False Pretense, or False Promises**: Ms. Rennaker failed to satisfy her burden to establish that Ms. Davis committed fraud, false pretense, or false promises or that she made a knowing and fraudulent falsehood; therefore, Count Six is DENIED.

7. **Count Seven—§ 523(a)(4): Debts for Fraud or Defalcation while acting in a Fiduciary Capacity, Embezzlement, or Larceny**: Ms. Rennaker satisfied her burden to established that Ms. Davis engaged in grossly reckless conduct sufficient to establish defalcation while acting in a fiduciary capacity under § 523(a)(4); therefore, Ms. Rennaker's damages claim in the liquidated amount of $75,082.98 constitutes a debt that is excepted from Ms. Davis' discharge under 11 U.S.C. § 523(a)(4).

The Court will enter a separate final judgment consistent with these Findings of Fact and Conclusions of Law.

### ### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###